**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

RICHARD THOMPSON,                :
                                 : Civil Action No. 09-1833 (JAP)
          Plaintiff,             :
                                 :
                                 :
          v.                     :    **OPINION**
                                 :
GEORGE HAYMAN, et al.,           :
                                 :
          Defendants.            :

**APPEARANCES:**

    RICHARD THOMPSON, Plaintiff pro se
    #568688
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey, New Jersey 08625

    JOSEPH M. MICHELETTI, ESQ.
    OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
    DIVISION OF LAW
    R.J. Hughes Justice Complex
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625
    Counsel for Defendants

**PISANO**, District Judge

    THIS MATTER comes before the Court on the motion (Docket entry no. 89) of plaintiff, Richard Thompson, for partial summary judgment against the defendants, and defendants' cross-motion for summary judgment dismissing the Complaint against them. (Docket entry no. 55). Defendants' cross-motion also was submitted in opposition to plaintiff's motion for partial summary judgment.

These motions were held in abeyance to allow the deposition of plaintiff. The motions were renewed after the plaintiff's deposition took place in November 5, 2010. (See Docket entry nos. 94 and 96). This matter is being considered on the papers pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, plaintiff's motion for partial summary judgment is granted in part, and defendants' cross-motion is denied in part.

## I.   BACKGROUND

On or about April 20, 2009, plaintiff, Richard Thompson ("Thompson"), filed a civil rights Complaint, pursuant to 42 U.S.C. § 1983, against the following defendants: George Hayman, then Commissioner of the New Jersey Department of Corrections ("NJDOC"); Michelle R. Ricci, Administrator of the New Jersey State Prison ("NJSP"); and L. Jackson, M. Lincoln and Linda Ellison, correctional officers who were employed at the NJSP mail room. (Complaint, Caption, Docket entry no. 1). Defendants filed an Answer to the Complaint on October 23, 2009. (Docket entry no. 32). Following initial discovery, Thompson filed a motion for partial summary judgment on or about February 22, 2010. (Docket entry no. 48). Defendants filed a cross motion for summary judgment and in opposition to plaintiff's motion on April 15, 2010. (Docket entry no. 55). Both plaintiff's and defendants' motions were denied without prejudice by Order filed on September 29, 2010. (Docket entry no. 87). Thompson re-

submitted his motion for partial summary judgment on October 13, 2010.  (Docket entry no. 89).  The motion was dismissed without prejudice to plaintiff re-filing same after discovery was complete.  (Docket entry no. 91).  By letter Order issued November 30, 2011, plaintiff's motion for partial summary judgment (Docket entry no. 89) was deemed re-filed.  (Docket entry no. 94).  By letter dated December 9, 2010, defendants re-submitted their opposition to plaintiff's motion and their cross-motion for summary judgment.  (Docket entry no. 55).

Thompson is a federal prisoner serving a life sentence for murder.[1]  He has been incarcerated at NJSP since January 12, 2007.  Thompson claims that, from December 2007 through April 2008, his legal mail was opened and inspected outside of his presence on numerous occasions in violation of his First Amendment rights.  In particular, Thompson alleges that the October 2007 NJSP Inmate's Handbook, which contained policies and procedures approved and implemented by defendants, Hayman, as

---

[1] Thompson is a federal prisoner serving a life sentence for a federal conviction and sentence imposed on June 27, 1977, in the United States District Court for the Northern District of California.  He has been serving his life sentence continuously since 1977 at other correctional facilities in the United States, but was transferred to the New Jersey State Prison ("NJSP") on January 12, 2007, pursuant to a contract agreement between the State of New Jersey and the Federal Bureau of Prisons.  The terms of Thompson's placement at the NJSP were not provided.  See February 24, 2010 Deposition of Richard Thompson at 6:13-10:13, attached as Exhibit A to the Defendants' Declaration of Keith Massey, Docket entry no. 55-3.

3

NJDOC Commissioner, and Ricci, as NJSP Administrator, expressly authorized correctional officials to electronically and visually inspect all incoming legal mail outside of an inmate's presence before being delivered to the inmate addressee.  (October 2007 NJSP Inmate's Handbook at pg. 45).

In his motion for partial summary judgment, Thompson attaches numerous forms indicating that his incoming legal mail was opened and examined outside his presence on the following dates: 12/15/07; 12/04/07; 12/05/07; 12/04/07; 01/26/08; 02/20/08; 03/28/08; 03/20/08; 03/09/08; and 06/10/09.[2]  Thompson also attaches several administrative remedy forms to his Complaint.  In each form, Thompson complains that his clearly marked legal mail was opened outside of his presence before being delivered to him.  Responses to these grievances varied from a blanket denial that "mail room staff does not open and/or read clearly marked legal mail" to an admission that any mail so opened is done so "accidently" and not purposefully.  In a letter dated March 27, 2008, the then-Acting Assistant Commissioner Lydell B. Sherrer wrote a response to Thompson's grievance stating that "mail room staff does not open and/or read clearly

---

[2] The dates listed are the dates each mail was delivered to plaintiff after it was opened.  Thompson received several pieces of legal mail on the same date (*i.e.*, 12/04/07), but they were separate legal mail.  The forms provided by plaintiff also include the postmark date of each legal mail sent to him.

marked legal mail." He referred Thompson to Administrator Ricci for review and action on his grievances.

Thompson also provides a copy of an April 10, 2008 Memorandum from the NJSP Administrator Ricci, which amended the 2007 Inmate Handbook regarding the inspection of incoming legal correspondence. The amendment provides that any inspection of incoming legal mail shall be performed in the presence of the inmate addressee.

In their opposition to plaintiff's motion and their cross-motion for summary judgment, defendants attach the transcript of Thompson's February 24, 2010 deposition.[3] In their Statement of Undisputed Material Facts, defendants admit that plaintiff's incoming legal mail was opened and inspected outside of his presence from January 2007 through April 2008. Defendants also admit that Thompson signed remedy forms as to certain instances. However, defendants contend that Thompson can not show that defendant Hayman was aware of Thompson's complaints. Defendants also claim that Thompson's claims against Hayman and Ricci are impermissibly based on supervisor liability because Thompson admitted in his deposition that these defendants are liable to him as their names were on the cover of the Inmate Handbook.

---

[3] Interestingly, although these motions were delayed for the completion of discovery, which included the continued deposition of plaintiff, defendants did not refer to the November 2010 deposition in support of their cross-motion for summary judgment.

(February 24, 2010 Deposition of Plaintiff at 18:15-19:10; 20:7-24).

Defendants further argue that the remaining defendant correctional officers can not be held liable because Thompson admits that he has no knowledge of who actually opened his mail; rather, he named those individuals as defendants who signed a receipt or worked in the mail room at the time his legal mail was opened. (February 24, 2010 Deposition of Plaintiff at 17:24-18:14).

## II. DISCUSSION

### A. The Summary Judgment Standard

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The substantive law identifies which facts are critical or "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1219 n. 3 (3d Cir.1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party

makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  <u>Id</u>. at 324.  The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, <u>id</u>. not just "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

    The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. <u>Pollock v. American Tel. & Tel. Long Lines</u>, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  <u>Anderson</u>, 477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. <u>Big Apple BMW v. BMW of North America</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  <u>Supervisor Liability</u>

    The defendants argue that NJDOC Commissioner Hayman and NJSP Administrator Ricci cannot be held liable on a claim of supervisor liability, and that summary judgment should be granted dismissing the Complaint as against them because plaintiff's claim is impermissibly based solely on supervisor liability without any allegations of personal involvement.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties"). In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to Bivens[4] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948. Thus, each government official is liable only for his or her own conduct. The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct. Id., 129 S.Ct. at 1949.

Under pre- Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors

---

[4] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

8

can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted).  "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue."  Id. at 130.

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test.  See Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official).  Hence, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone

for establishing liability for the violation of a plaintiff's constitutional right.  Williams v. Lackawanna County Prison, 2010 WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, Thompson provides proof, by way of attachment of the October 2007 NJSP Inmate's Handbook signed by defendant Ricci, that NJSP Administrator Ricci was the "moving force" who had "established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  See Santiago, 629 F.3d at 127 n.5.  As the Administrator of the NJSP, Ricci is the person directly responsible for creating, establishing, overseeing and maintaining the policies, practices and procedures regarding the administration of the NJSP.  Indeed, by her signature and introduction on the October 2007 Inmate Handbook,

10

it is clear that Ricci is imparting to the inmates at NJSP that she is the person responsible for making and enforcing the rules at NJSP that are set forth in the handbook.  Thus, Ricci expressly directed the deprivation of Thompson's First Amendment rights by enacting the policy, at page 45 of the Inmate Handbook, of opening an inmate's clearly marked legal mail outside of his presence, in violation of Jones v. Brown, 461 F.3d 353 (3d Cir. 2006), which policy gave mail room officers no discretion in the decision to open plaintiff's legal mail in such manner directly violating his constitutional rights.

    Further, Ricci's direct involvement in the enactment and enforcement of this policy of opening an inmate's legal mail is confirmed by her later April 10, 2008 Memorandum, which amended the October 2007 Inmate Handbook to reflect the current policy of inspecting incoming legal mail pursuant to N.J.A.C. 10A:18-3.4(a)-(e).[5]  Thus, the Court finds that plaintiff's evidence is

---

    [5] 10A:18-3.4 Inspection of incoming legal correspondence
(a) Incoming legal correspondence shall be opened and inspected by designated correctional facility staff for contraband only.
(b) Incoming legal correspondence shall be opened and inspected only in the presence of the inmate to whom it is addressed.
(c) Incoming legal correspondence shall not be read or copied. The content of the envelope may be removed and shaken loose to ensure that no contraband is included.  After the envelope has been inspected the correspondence shall be given to the inmate.
(d) The correctional facility may require that the inmate sign a slip acknowledging receipt of the incoming legal correspondence.
(e) Where there is substantial reason to believe that the incoming correspondence is not legal in nature or that it contains disapproved content pursuant to N.J.A.C. 10A:18-2.14, the Administrator shall immediately notify the appropriate

sufficient to show that defendant Ricci expressly directed the correctional staff at NJSP to open clearly marked incoming legal mail outside of plaintiff's presence in violation of his First Amendment rights.  There is a clear connection between Ricci's directions in the October 2007 Inmate Handbook and the constitutional deprivation suffered by Thompson, namely, the opening of his clearly marked incoming legal mail outside of his presence, that is sufficient to establish "a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Santiago, 629 F.3d at 130.  Thompson does not simply allege rote legal conclusions against Ricci, and indeed, has supported his factual allegations with evidence that goes well beyond mere "labels and conclusions", see Iqbal, 129 S.Ct. at 1949, which is sufficient to establish Ricci's personal involvement in the wrongful conduct alleged.  Accordingly, defendant Ricci's cross motion for summary judgment based on the defense that she can not be held liable on a claim of supervisor liability must be dismissed.  Plaintiff's

---

Assistant Commissioner.  The incoming legal correspondence shall not be inspected in a manner other than as outlined in this subchapter without first obtaining instructions from the appropriate Assistant Commissioner.

Amended by R.1997 d.431, effective October 6, 1997. Special amendment, R.2001 d.426, effective October 19, 2001. Amended by R.2002 d.407, effective December 16, 2002; R.2007 d.158, effective May 21, 2007; R.2008 d.141, effective June 2, 2008.

motion for partial summary judgment on the issue of liability as against defendant Ricci will be granted.

However, the Court will grant defendant Hayman's cross-motion for summary judgment because Thompson has failed to demonstrate that Hayman had any direct or actual involvement in the violation of Thompson's First Amendment rights by virtue of NJSP policy at issue.  Thompson simply alleges that Hayman is liable because his name is printed on the Inmate Handbook.  There is simply no evidence to show that Hayman was personally involved or directed the implementation of the offending policy of opening legal mail outside of an inmate's presence in violation of Thompson's First Amendment rights.  Therefore, summary judgment will be granted in favor of defendant Hayman, and plaintiff's motions for partial summary judgment with respect to Hayman will be denied.

C.   Plaintiff Is Entitled to Partial Summary Judgment

Thompson's Complaint alleges that defendants violated his First Amendment rights by opening his legal mail outside his presence.  The Court of Appeals for the Third Circuit has long held that prisoners have a First Amendment right not to have properly marked legal mail opened outside of their presence.  See Fontroy v. Beard, 559 F.3d 173, 174-75 (3d Cir. 2009); Jones v. Brown, 461 F.3d 353, 355 (3d Cir. 2006), cert. denied, 127 S. Ct. 1822 (2007)(holding that the legal mail policy of state prisons in opening legal mail outside the presence of the inmate violated

13

the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff); Bieregu v. Reno, 59 F.3d 1445, 1458 (3d Cir. 1995)("[A] pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court."), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  Thus, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen, plainly states a First Amendment claim.[6]

The Third Circuit opined that a policy that allows the opening of legal mail without the physical presence of addressee inmates "deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications."  Jones, 461 F.3d at 359.

Prisoners may establish a violation of the First Amendment without establishing an actual injury where there is a pattern

---

[6] Nevertheless, inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).

and practice of opening properly marked incoming legal mail outside an inmate's presence.  As the Third Circuit has stated, "nothing in the reasoning of Casey or Oliver [v. Fauver, 118 F.3d 175 (3d Cir. 1997)] suggests that a prisoner alleging that officials have opened his legal mail outside of his presence and thereby violated his First Amendment rights need allege any consequential injury stemming from that violation, aside from the violation itself."  Jones, 461 F.3d at 359.

Thus, unlike an inmate's right to court access, in cases where a prisoner's legal mail is opened repeatedly outside of his presence, there is no "actual injury" requirement to assert a claim.  Bieregu, 59 F.3d at 1455.  Conversely, the court distinguished between a single, inadvertent opening of properly marked legal mail outside an inmate's presence and a pattern or practice of such actions.  The former may not infringe a prisoner's right to free speech, nor his right to court access absent a showing of actual injury.  Bieregu, 59 F.3d at 1458.

In this case, Thompson has demonstrated that his legal mail was repeatedly and continuously opened outside of his presence on numerous occasions from December 2007 until April 2008, despite his repeated complaints about these First Amendment violations.  He provides ten separate forms documenting these violations.  Moreover, defendants do not deny that Thompson's legal mail was opened outside his presence on all of these occasions.

Defendants do contend, however, that the wrongful conduct alleged by Thompson does not rise to the level of a constitutional violation because the legal mail was opened inadvertently. Defendants also state that such mail that was opened was not clearly marked as legal mail. Further, defendants argue that there were only a "few, isolated incidents", which do not support a finding that Thompson's rights were violated intentionally, and that Thompson admitted at his deposition that his legal mail is now properly delivered to plaintiff to be opened in his presence.

Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation. See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)(accidental opening of one piece of constitutionally protected legal mail did not give rise to a constitutional claim); Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997)(holding that isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990)(isolated inadvertent incidents of opening inmate's legal mail do not state a constitutional claim); Bryant v. Winston, 750 F. Supp. 733, 734 (E.D. Va. 1990)(holding that an isolated incident of mail mishandling, which is not part of any pattern or practice, is not actionable under § 1983); Beese v. Liebe, 51

Fed. Appx. 979, 981 (7th Cir. 2002)(dismissal of First Amendment claim that four pieces of legal mail opened outside of inmate's presence did not rise to the level of a constitutional violation upheld where inmate presented no evidence that his mail was not intentionally opened).

This Court finds, however, that plaintiff has demonstrated more than a few, isolated instances when his clearly marked legal mail was opened outside his presence.  Indeed, Thompson submits evidence of ten separate occasions when his clearly marked legal mail was opened in a time span of three months.  These circumstances plainly indicate that defendants' conduct was not an "isolated" or "inadvertent" event.[7]

Accordingly, the Court finds that Thompson has demonstrated by the facts alleged and evidence submitted on his motion for partial summary judgment, that the defendants, Administrator Ricci and L. Jackson, engaged in a pattern or practice of improper handling of Thompson's legal mail sufficient to find a First Amendment violation.  Accordingly, plaintiff's motion for partial summary judgment as to this claim against these two defendants will be granted.

Nevertheless, summary judgment will be granted in favor of defendants, M. Lincoln, Linda Ellison and F. Bryant, because plaintiff has shown that these defendants were involved in

---

[7] In contrast, the Court finds that the June 2009 incident was clearly an isolated occurrence, and thus, does not amount to a constitutional violation.

17

isolated events (one apiece), which suggests an accidental opening of one piece of constitutionally protected legal mail that does not give rise to a constitutional claim.[8]

Finally, defendants argue that plaintiff failed to exhaust his administrative remedies as to all of the alleged incidents. Thompson attaches three administrative grievance forms dated January 28, 2008, March 9, 2008 and June 10, 2009. The first two grievances indicated that this was an ongoing practice occurring too often to be accidental. Thompson's grievance form of March 9, 2008 also states that he had filed numerous other complaints, but no action was taken. The Court is satisfied by the evidence submitted that Thompson has exhausted his administrative remedies with respect to his claim that his clearly marked legal mail was

---

[8] Defendants also argue that Thompson has not shown that the individual mail room officers/employees were personally involved sufficient to support a claim of liability under § 1983. Defendants contend that plaintiff could not link these defendants to plaintiff's legal mail other than by the simple fact that they worked in the mail room. The Court finds this argument specious. Thompson has provided written documentation that these individuals had personal involvement with plaintiff's legal mail. This documentation, which displays the signature of these individual officers/employees, are attached to plaintiff's motion. Obviously, plaintiff cannot attest to witnessing these individuals opening his mail as the very basis of the claim is that the conduct was performed outside of his presence. Moreover, defendants have not countered with any plausible documentation to prove that these individuals were not personally involved in the opening of plaintiff's legal mail as alleged. Accordingly, plaintiff has demonstrated that Jackson is liable for his wrongful conduct in personally opening Thompson's legal mail on numerous occasions, but as to the other officers, Lincoln, Ellison and Bryant, although Thompson has shown their personal involvement, they participated in only isolated incidents, which does not give rise to a constitutional violation. Therefore, these defendants are entitled to summary judgment.

opened outside of his presence from December 2007 through March 2008, in violation of his First Amendment rights.[9]  Therefore, the Court rejects defendants' non-exhaustion argument and will deny their motion for summary judgment on this ground.

### III.  CONCLUSION

Therefore, for the reasons set forth above, plaintiff's motion for partial summary judgment, on the issue of liability, will be granted in part and denied in part.  Namely, plaintiff's motion for partial summary judgment as against defendants Administrator Ricci and L. Jackson, will be granted on the issue of liability, but will be denied as to the remaining defendants, Commissioner Hayman, M. Lincoln, Linda Ellison and F. Bryant.  Defendants' cross motion to dismiss and/or for summary judgment will be denied as to defendants Ricci and Jackson, but will be granted as to defendants Hayman, Lincoln, Ellison and Bryant, and these defendants will be dismissed from this action accordingly.  An appropriate order follows.

/s/   Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: July 6, 2011

---

[9]  See fn. 6, supra, with respect to the June 2009 incident.